and we move to the last case this afternoon of Cervantes v. Kijakazi Mr. Good you may proceed. Thank you your honor. May it please the court my name is The district court should not have affirmed the ALJ's deficient decision. The district court articulated and applied an overly deferential standard of review which essentially put into position to rubber stamp the ALJ's decision. The ALJ failed to accommodate all the plaintiff's physical and mental limitations in combination in the residual functional capacity assessment and it was not supported by the requisite logical bridge. It is on these points I'd like to this time. Go ahead. Okay in a social security case when we talk about the impairments being considered in combination there's two sides to the coin of combination. There's the physical and the mental and I'd like to start with the mental. At the hearing the defendant hired Dr. Allen Heineman to testify. When discussing the criteria of paragraph b limitations under the listings the doctor testified that the claimant had moderate limitations in daily activities, moderate limitations in social functioning and marked limitations in concentration persistence and pace. The doctor also found that there was no episodes of deterioration and decompensation. Had the ALJ found two marked limitations or one extreme limitation at this step the claimant would have been presumptively found disabled. Therefore the presumptive listing was not met by a razor thin margin. When asked by hearing counsel does your opinion conflict with any opinions in the file the doctor testified no at page 72. Consistent with this the ALJ wrote in the administrative record in the last sentence at page 22 his opinion did not conflict with any opinions in the file. This is false. Dr. Heineman said that there was a marked limitation in concentration persistence and pace. Dr. Margolin the plaintiff's treating primary care physician at page 1294 in a form medical source statement gave a rather extreme limitation saying the individual the plaintiff would be off task constantly 67 to 100 percent of the time. Contrary to the ALJ and Heineman's opinion, Ms. Cervantes' mental illness cannot be put on a schedule. Dr. Heineman found that she would need a 15 minute break every two hours and essentially that her panic attacks, anxiety, PTSD could be put on a schedule and that doesn't take into account her physical limitations like her seizure disorder. There is a difference between off task and breaks. You have regularly scheduled breaks, a 15 minute break in the morning, a 30 minute break for lunch and a 15 minute break in the afternoon typically. This is inconsistent with Dr. Heineman's testimony that every two hours she could have a 15 minute break and it's not consistent with the RFC. Also what's left out of the opinion is the consultative examiner Dr. Rudolph's notes. Dr. Rudolph found at page 523 on September 8, 2014 she presented with vegetative symptoms. She wrote this twice at 523 and 525. She didn't know what was going on. She was zoning out. I have a hard time finding that this type of vegetative symptoms is not going to take you off task or give you the need for breaks in excess of what is normally allowed at a job. Turning to the physical side of the combination that the ALJ failed to consider, the neurologist Dr. Dobrin at page 1167 she notes that the claimant or the plaintiff rather had trouble focusing and could not understand what the doctor was saying. She was having symptoms of psychosis at page 1352. Symptoms of psychosis again at 1355. She's seeing and hearing things at 1374. How was this not considered by the ALJ and the testifying psychologist? It should have been considered in combination with the eight physical impairments, the seizure disorder, fibromyalgia, the morbid obesity of 43, the degenerative disc disease with a cervical spine fusion, sleep apnea, frequent migraines with an abnormal MRI of the brain, two foot surgeries and a torn rotator cuff. These should have been considered in combination with the PTSD, anxiety, depression, symptoms of psychosis, hallucinations both visually and auditory. Most of this was left out of the ALJ's decision. Now speaking to the physical, the ALJ found this individual to be able to perform light work. If you turn to the physical therapy record which I think typically provide the best insight on someone's physical capabilities as they relate to someone's work because when you go to physical therapy, you work with the physical therapist for an hour. When you go to a primary care doctor, a neurologist, you're sat down by a nurse, the doctor comes in 5-10 minutes, maybe 15 if you're lucky, nurse takes some more notes, they leave. You're with the physical therapist for an hour. So these notes are important. So at page 401 is the discharge summary in the administrative record. She's discharged for little improvement. She's able to walk at 4.03. Keep in mind normal walking speed is 3.2 miles an hour. They set a goal of being able to carry 3-5 pounds with her left hand and walk across the room. This goal is not met. Where is the logical bridge connecting this to light work? This is far below sedentary work. This does not, and I took a break to, but I'll continue on with these. At 4.03 she had difficulty walking 150 feet. She couldn't ascend 17 stairs. She continues to wake up during the night. She has guarding with decreased step length and foot clearance. She's unable to do dishes. She has limited range of motion in her cervical and lumbar spine. She's talking to a doctor at page 436. She's in so much pain she doesn't want injections anymore. She'd prefer to have surgeries, which she says. She's got two abnormal MRIs of her brain. There's one, they're kind of both in a summary at page 425. They're both consistent with abnormality. Maybe these abnormalities are causing the headaches. Maybe they're causing the seizure disorder. She does talk about having frequent migraines, but again the doctor, the ALJ rather, writes this off. In addition, she has abnormal EEGs. Specifically, July 7, 2014 at 4.19, it's not just an abnormal EEG, it's very abnormal. Not trying to hide the ball, it does say at subsequent EEG increasing topomax was much better. Nevertheless, how is someone supposed to have a seizure disorder seen on an EEG and a migraine headache disorder on an MRI and that not require any greater limitation for off task behavior and breaks? And when you combine that with her need or her reduced physical capacity rather, how is she put at light work? I'd like to reserve the rest of my time for rebuttal. Thank you. Thank you, counsel. Chadwick. May it please the court. John Chadwick on behalf of the commissioner. Good afternoon, your honors. Your honors, the issues in this case are actually very common issues. One, the ALJ's assessment of Ms. Cervantes' subjective statements about her limitations. And two, the ALJ's assessment of her residual functional capacity. The ALJ followed the regulations in making an evidence-based determination that Ms. Cervantes' statements were not wholly reliable due to their inconsistency with medical evidence and other evidence. In turn, the ALJ reasonably assessed what Ms. Cervantes could still do despite her limitations and she tied her conclusions to the evidence. The ALJ more than met her burden of minimally articulating her reasoning and substantial evidence, which is not a high evidentiary bar, supports her finding. Therefore, the ALJ's decision should be affirmed. Now, I'd like to respond to a few points that counsel raised. First of all, Mr. Chadwick, can I ask you one question before you do that? Certainly, your honor. The ALJ, as you know, discounted the Dr. Margolin. You believe that was error? No, I do not, your honor. Okay, and why not? The ALJ, because Dr. Margolin, first of all, based his opinion in part on the symptoms from the recently, then recently discovered rotator cuff tear. And because, excuse me just a minute, your honor, the ALJ also found that Dr. Margolin did not support his conclusions with citations to evidence or not citations formally, of course, but with evidence from his treatment notes. The other reason that I believe it was not error was that Dr. Margolin consistently throughout the record noted normal and mostly normal findings. For instance, nine visits from physical findings in normal gait, except for finding neck pain with motion at one of those visits and tremors at one visit. Similarly, six visits occurred between January and September 2016, your honor. And again, Dr. Margolin charted mostly normal findings, except for abnormal left shoulder findings at those latter visits. But again, that was related to what was then a condition or a new onset of a torn rotator cuff. That's why I contend that there was no error in the assessment of Dr. Margolin's opinion. And Ms. Cervantes did not argue that. Thank you for this court. Well, with respect to the combination of the impairments, the physical impairments, your honors, the ALJ did provide a logical bridge between the evidence and her conclusions. With respect to the foot problems and back and neck and arm conditions that Ms. Cervantes had raised and complained about, for example, the ALJ considered how the physical examinations after the foot surgery didn't show any abnormal findings about abnormal gait or other foot problems. For instance, the both of the consultative examinations by Dr. Kogan and again, Dr. Margolin's primary care visits, for instance, record, they are administrative record 810, 816, 831, 846, 1077. The ALJ also noted the diagnostic imaging and testing showed only mild degenerative changes in the neck and low back, and they were unchanged from earlier studies. They also, those studies also showed that the surgical changes from the 2011 neck surgery were stable and that there was no carpal tunnel syndrome. With respect to Ms. Cervantes obesity, there too, the ALJ provided a thorough explanation about her consideration of obesity, noting that there were no serious musculoskeletal findings indicating any major deterioration in Ms. Cervantes physical condition caused by obesity, and that there were no significant consequences from it to any major body system, such as the respiratory system. The ALJ did acknowledge clearly that the obesity contributed to the limitation to light exertion with only and the argument otherwise about extra strain or lack of endurance because of the obesity is merely speculative. With respect to the seizure disorder that counsel brings up, the ALJ originally found there too that to the extent Ms. Cervantes had a seizure disorder, the seizures were mild and or well controlled based on there being minimal documentation of actual seizure activity and even minimal documentation of seizure complaints. Yes, there were abnormal electroencephalograms. The ALJ acknowledged those. The ALJ also noted that there were normal ones, such as the extended, there was a five-day EEG where Ms. Cervantes was actually in a facility for a five-day long EEG in late 2015. It did show some findings suggest a predisposition for generalized seizures, but there were no seizures seen or recorded throughout the five days. Neurologist Dr. Dobrin noted benign findings and as the ALJ observed, she noted on a couple of occasions that the spells or episodes that Ms. Cervantes was hearing did not sound at all like seizures, but were more likely sounding, excuse me, they were sounding to Dr. Dobrin like panic attacks or other depressive or anxiety-related symptoms. As for the contention that the ALJ didn't provide a logical bridge, it's important to remember that, as this court has said, the logical bridge language in the Seventh Circuit case law is, quote, descriptive, but does not alter the applicable substantial evidence standard, unquote. And that's Brumbau v. Saul, Your Honors. As the Supreme Court and V. Stack v. Berryhill and this court subsequently have observed, the substantial evidence standard is not a high bar, and it is only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Regarding Dr. Rudolph, yes, Dr. Rudolph did note vegetative symptoms, which are sleep, appetite, and energy. Those are the three vegetative symptoms of depression that but Dr. Rudolph also noted normal findings, and that's at 525, 526 of the record, Your Honors. And so the district court did not apply an over-deferentially standard of review, because as, again, as this court has observed, it is a deferential standard with all due respect, and I'm not saying that, I would never say that the ALJ's decision should be rubber stamped, of course, but the district court did not do that here. The district court did consider the evidence as it should, and one last point, the ALJ, with respect to the mental impairments, relied on medical expert testimony from Dr. Ellen Heineman, who was at the hearing as the psychological expert, and heard Ms. Cervantes testify, and still concluded that she could work two hours at a time before needing a break on simple work, and the record supports Dr. Heineman's task time that had to be incorporated into the residual functional capacity. For the reasons I've discussed or argued today, Your Honors, and as discussed and argued in the Commissioner's brief, Commissioner respectfully asks that this court affirm the ALJ's decision. Thank you. Thank you, Mr. Chadwick. Mr. Gooden? Yes, Your Honors. Thank you. The defendant is common because the ALJ's decisions are written in boilerplate. The defendant started by saying that the plaintiff's inconsistent statements are one of the big factors here, but I didn't hear him give one inconsistent statement today. The substantial evidence standard to a layperson should be called show, don't tell. Show us your analysis, don't tell us you didn't. Dr. Margolin's opinion is supported here. You know, in a lot of cases I've listened to at this court, there is question about whether these physicians are reviewing each other's notes, whether they're communicating with each other, and whether they're getting all the objective testing. Like if you're a neurologist, do you send it to the primary care physician? Well, in this case, there's no question about that. The MRI of her brain was faxed to Dr. Margolin at 499. The EEGs of her brain were discussed with the patient and Dr. Margolin at 443. Even a mild seizure is going to take someone off task. And if it's not a seizure, if it's an anxiety attack, won't it take them off task at any time? Or is it always going to take them off task at the 15-minute period after a two-hour period of work? Where does that come from? There is no logical bridge there. The other thing I want to point out is Dr. Kogan's assessments make no sense. At page 528 of the administrative record, the plaintiff goes to see Dr. Kogan. This is like four months after she's discharged from physical therapy for not being able to walk at even a reasonable pace. How could this be that she is miraculously better in four months? Thank you for your time. The district court should not have affirmed the ALJ's decision. On behalf of Ms. Cervantes, we request you reverse and remand this decision. Thank you. Thank you. Thanks to both counsel. And the case will be taken under advisement, and the court will be in recess.